UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

---

WILMAR NASH,

    Plaintiff,

Case No: 1:15-cv-_____

-v-

SHERIFF JOSEPH M. UNDERWOOD, JR.,
CASS COUNTY, a Municipal Corporation,
GLENDA ROGERS, RN, BSN, OFFICER PAUL
DIAZ, SGT. TODD JOHNSON, SGT. ROGER
JACKSON, DEP (FIRST NAME UNKNOWN) FOGG,
OFFICER (FIRST NAME UNKNOWN)SHOUP, jointly
and severally,

    Defendants.

---

MICHAEL D. MARRS (P25117)
Conybeare Law Office, P.C.
Attorney for Plaintiff
519 Main Street
St. Joseph, MI 49085
(269) 983-0561

---

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND
DEMAND FOR JURY TRIAL**

    NOW COMES Wilmar Nash, by and through his attorneys, Michael D. Marrs and Conybeare Law Office, P.C., and for his complaint against the defendants jointly and severally, states as follows:

**<u>Jurisdiction</u>**

    1.    The action arises under the United States constitution particularly under the provisions of the Eighth and Fourteenth amendments to the United States Constitution under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, §1983 and §1988.

1

2. That this court has jurisdiction in this action under the provisions of Title 28 of the United States Code, §1343, §1331, §1367(a) for supplemental jurisdiction and as well pendent jurisdiction over the state claims which arise out of the nucleus of operative facts common to Plaintiff's Federal claims.

3. That plaintiff brings suit against each defendant, both in their individual and official capacities, jointly and severally.

4. That each and every act of defendants was, by and under, the color and pretense of statues, ordinances, regulations, laws, custom and usage of the County of Cass, State of Michigan, and by virtue and under the authority of the defendant's employment with the County of Cass, Sheriff of Cass County and Cass County Sheriff's Department.

5. The amount in controversy exceeds $75,000.00 exclusive of costs, interests and attorney fees.

## Common Allegations

6. Plaintiff hereby reasserts and realleges each and every allegation contained in paragraphs 1-5 as is more fully set forth herein.

7. That plaintiff, at all times pertinent hereto, was a citizen of Marcellus, MI, United States of America and was entitled to all rights, privileges and immunities accorded to all residents of the County of Cass, State of Michigan and the United States of America.

8. That at all times pertinent hereto, plaintiff resided at: 173 S. Center Street, Marcellus, Michigan.

9. That on September 15, 2014, plaintiff was arrested on a bench warrant and lodged in the Cass County Jail to await trial.

10. That defendant, Joseph M. Underwood, Jr., a resident of Cass County, was at all times relevant, the elected Sheriff of Cass County and the keeper of the jail and as such is responsible for the care of the inmates, the operation and maintenance of the jail and the training, supervising and instruction of the administrative staff, deputy sheriff's, special deputy sheriff's and the medical personnel in the performance of their duties.

11. That defendant, Joseph M. Underwood, Jr., is an elected statutory county official for the County of Cass and is not afforded protection under Article 11 of the United States Constitution.

12. That defendant, County of Cass, a municipal corporation is a subdivision of the State of Michigan pursuant to the laws of the State of Michigan and is responsible for providing and recognizing proper treatment and medical services for the inmates and/or detainees at the Cass County Jail.

13. That defendant Glenda Rogers, RN, BSN, is a licensed medical provider and was at all relevant times hereto an employee, agent or ostensible agent of the defendant County of Cass and defendant Sheriff Joseph M. Underwood, Jr., providing medical services to the inmates of the Cass County Jail and was acting within the course and scope of employment and under the color of law and, upon information and belief, was a resident of Cass County, Michigan.

14. That defendant Officer Paul Diaz, was at all relevant times an employee of the defendant County of Cass and defendant Joseph M. Underwood, Jr., Sheriff, stationed within the Cass County Jail, and was acting within the course and scope of his employment and under the color of law and upon information and belief was a resident of Cass County, Michigan.

15. That defendant Sgt. Todd Johnson, was at all relevant times an employee of the defendant County of Cass and defendant Joseph M. Underwood, Jr., Sheriff, stationed within the

Cass County Jail, and was acting within the course and scope of his employment and under the color of law and, based upon information and belief, was a resident of Cass County, Michigan.

16. That defendant Sgt. Roger Jackson, was at all relevant times an employee of the defendant County of Cass and defendant Joseph M. Underwood, Jr., Sheriff, and was stationed within the Cass County Jail, and was acting within the course and scope of his employment and under the color of law and, based upon information and belief, was a resident of Cass County, Michigan.

17. That defendant Deputy (First Name Unknown) Fogg, was at all relevant times an employee of the defendant County of Cass and defendant Joseph M. Underwood, Jr., Sheriff, and was stationed within the Cass County Jail, and was acting within the course and scope of his employment and under the color of law and, based upon information and belief, was a resident of Cass County, Michigan.

18. That defendant Officer (First Name Unknown) Shoup, was at all relevant times an employee of the defendant County of Cass and defendant Joseph M. Underwood, Jr., Sheriff, and was stationed within the Cass County Jail, and was acting within the course and scope of his employment and under the color of law and, based upon information and belief,  was a resident of Cass County, Michigan.

19. On September 19, 2014 at approximately 4:50 p.m. plaintiff Wilmar Nash, began to experience the clear and obvious symptoms of an impending myocardial infarction or heart attack.

20. At approximately 4:55 p.m. plaintiff complained and sent a "kite" indicating that he was having a serious medical problem and communicated to Defendant Sgt. Jackson and Defendant Officer Shoup that he was experiencing severe pain and tightness substernally which

was radiating into his left arm.   Plaintiff Nash further informed Defendant Sgt. Jackson that he thought he was suffering a heart attack.

21.	Thereafter, Plaintiff Nash was brought to the nurses station within the Cass County Jail and an examination was conducted by Defendant Officer Shoup who, despite clear indications to the contrary, reported Plaintiff Nash's examination to be within normal limits.

22.	That at the aforesaid time and place, Defendants Shoup and/or Jackson purportedly called the jail nurse, co-Defendant Glenda Rogers, RN and informed her of plaintiff's complaints.  However, despite the serious nature of plaintiff's complaints and statements that he was having a heart attack, Defendant RN Rogers did not come to the Cass County Jail and examine Plaintiff Nash.

23.	Thereafter, at approximately 5:15 p.m. on September 19, 2014, Plaintiff Nash was moved from his unit to Room 504 (booking) for observation.

24.	There was no observation performed with regard to Plaintiff Nash for the next 3 hours until plaintiff was moved from Room 504 to Room 704 because a combative prisoner was being booked.

25.	Thereafter, no observations were made of Plaintiff Nash, nor was his well-being checked upon by any of the above named defendants for another two (2) hours.

26.	At approximately 11:15 p.m. on September 19, 2014, co-Defendant Sgt. Johnson questioned Plaintiff Nash who had been continuously crying out in pain and he again informed Defendant Sgt. Johnson that he was having continuing to experience severe chest pain and thought he was having a heart attack.

27.	That during the time Plaintiff Nash was complaining to the defendants none of the defendants did anything to help him and further told him that unless he stopped complaining, they would put him in a restraint chair and put him someplace where no one would hear him.

5

28.     That Plaintiff Nash remained in Room 704 until approximately 1:05 a.m. on September 20, 2014, when he was returned to D block where he had originally been prior to being moved to Room 504 (booking).  Despite Plaintiff Nash's continuing complaints of pain, no efforts were made by any of the defendants to do anything with regard to addressing plaintiff's serious medical needs.

29.     Thereafter from approximately 1:05 a.m. until 7:45 a.m. on September 20, 2014, no defendant made any effort in any regard to address the serious complaints and serious medical needs of the plaintiff.

30.     That at approximately 7:45 a.m., Defendant Officer Diaz was informed by an inmate that plaintiff was feeling ill and thought he was having a heart attack.  Thereafter, Plaintiff Nash informed Defendant Officer Diaz of his serious complaints of center substernal chest pain which was radiating into his left arm.

31.     That there was no attempt whatsoever by Defendant Officer Diaz to do anything to address Plaintiff Nash's serious medical needs with the exception of the administration of an antacid.

32.     After being informed of plaintiff's serious medical needs and complaints, Defendant Officer Diaz continued his normal rounds including distribution of medications to other inmates.  Despite plaintiff's serious medical needs and complaints, Defendant Officer Diaz did not call the on-call jail nurse to inform her of Plaintiff Nash's serious medical problems.

33.     That at approximately 10:45 a.m., Defendant RN Rogers, finally arrived at the jail to evaluate Plaintiff Nash.  Upon evaluation Defendant RN Rogers suggested that Plaintiff be taken via ambulance to Borgess Lee in Dowagiac, Michigan to be evaluated.

34.     Thereafter, emergency medical services were called to transport Plaintiff Nash. However, upon evaluation by emergency medical technicians a decision was made by the

technicians/medics to transport plaintiff emergently to Borgess Hospital in Kalamazoo, Michigan to address their medical findings that plaintiff was suffering from a myocardial infarction (heart attack).

35. That the actions and inactions of the above Defendant officers represented and constituted a deliberate indifference to plaintiff's serious medical needs in violation of the Constitution of the United States, the Eighth and Fourteenth Amendments, and in addition, a violation of §1983 of 42 U.S.C.

## COUNT I.
## VIOLATION OF CIVIL RIGHTS PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION AND 42 U.S.C. §1983 ALL DEFENDANTS

36. Plaintiff hereby reasserts and realleges each and every allegation contained in paragraphs 1 through 35 as though fully set forth herein.

37. That acts and omissions of any actions by all defendants in their individual and official capacities under the Eighth and Fourteenth Amendments to the Constitution, as well as 42 U.S.C. §1983 and §1988 were all performed under the color of the state law and were unreasonable and performed knowingly, wantonly, recklessly, maliciously, with gross negligence, callousness, and with deliberate indifference to Wilmar Nash's well being and serious medical needs and in reckless disregard of his safety and thereby caused him to suffer the unnecessary and reckless infliction of pain and suffering by the failure to obtain medical treatment and because of which Plaintiff is entitled to compensatory and punitive damages.

38. That the conduct of each Defendant and all of its employees, agents and/or ostensible agents, were actions under the color of the state law when they deprived Plaintiff Wilmar Nash of his clearly established rights, privileges and immunities in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, and of 42 U.S.C. §1983 and §1988.

39. That the conduct of each Defendant was pursuant to, and in execution and implementation of the color of state law and was an officially sanctioned policy, regulation or custom of each of the named Defendants.

40. That the Defendant Sheriff Underwood exhibited deliberate indifference, pursuant to the Eighth and Fourteenth Amendments to the Constitution, to serious medical needs, to-wit:

   a. Failure to train deputy sheriffs, correction officers and jail administrators as well as medical personnel at the County Jail in the proper determination of medical emergencies and such omitted training was in willful and wanton disregard for Wilmar Nash's serious medical needs and were grossly negligent and reckless acts.

   b. Failure to hire individuals whose character and personality would not pose a potential danger to Wilmar Nash.

   c. Failure to determine the immediate need for medical attention by both the Defendant jail personnel and the medical providers and the failure to recognize the danger of an inmate experiencing a severe medical disorder and failure to obtain proper medical attention for a prisoner whose dire condition necessitated prompt medical attention.

   d. Knowingly and recklessly hired and trained as correction officers, jail administrators, physicians, nurses and/or other medical personnel who are unable to determine serious medical conditions which render them unfit to perform the necessary duties of the position.

   e. Knowingly and recklessly failing to discipline, instruct, supervise or control correctional officers, jail personnel, physicians, nurses and/or other medical personnel conduct and thereby encouraging acts and omissions that contributed to the injuries visited upon Wilmar Nash.

   f. Recklessly, intentionally and/or willfully denying medical care to an inmate they knew needed serious medical attention.

41. That all Defendants individually and, as agents for defendants, personally participated in the implementation, execution, and omission of the official policies, training, practices, regulations, and/or customs referred to above.

42. That all officials had a duty to adequately train and supervise; all Sheriff Administrators, deputy sheriffs, special deputy sheriffs, physicians, nurses and/or other medical personnel to obtain medical treatment, supervise and provided care and treatment to Wilmar Nash that was not grossly negligent or that amounted to a reckless indifference to life.

43. That the Defendants herein permitted the implementation of inappropriate de facto policies which reflected or represented policies, practices and customs which deviated from acceptable standards.

44. The unconstitutional conduct of the Defendants named herein implemented and executed the following policies and customs of these Defendants:

   a. Implicit authorization, approval and knowing acquiescence in the wrongful conduct by said Defendants and/or their employees, agents or ostensible agents in the treatment of inmates;

   b. The use of and acceptance of unconstitutional excessive force by the withholding of medical care which constituted punishment of those suffering serious medical conditions;

   c. Failure to discipline or terminate jail personnel known to have engaged in the use of excessive force through withholding of medical care which constituted punishment of those suffering serious medical conditions and creating an atmosphere where jail personnel believed they would not be disciplined for abusive conduct toward inmates;

   d. Failure to eliminate jail policies, practices and customs which deviate from applicable Federal and State standards for jail operations;

   e. Failure to investigate, report and follow-up on prior incidents involving the use of: excessive force, withholding food, water, medication and emergency medical care by jail and medical personnel;

45. That as a direct and proximate result of the wrongful conduct of Defendants, as alleged herein, Wilmar Nash has suffered and will continue to suffer past, present and future conscious pain and suffering, permanent cardiac injury, total and permanent disability and past, present and future economic damages.

46. That pursuant to the provisions of 42 U.S.C. §1988, Plaintiff is entitled to recover attorney fees and costs of litigation for the causes of actions alleged under the Constitution and the laws of the United States.

47. That as a proximate cause of Defendants acts and/or omissions, Plaintiff suffered the following:

   a. Medical and hospital expense and daily care expense past, present and future;
   b. Inhumane and tortuous conscious pain and suffering;
   c. Economic and non-economic compensatory damages;
   d. Punitive damages;
   f. Any and all other damages including but not limited to both attorney fees recoverable under 42 U.S.C. §1983 and §1988 and any and all damages otherwise recoverable under common law.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter a Judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $20,000,000.00, and award costs, interest, and attorney fees as well as punitive and/or exemplary damages.

## COUNT II.
**WILLFUL AND WANTON MISCONDUCT PER MICHIGAN COMMON LAW TOGETHER WITH A VIOLATION OF CIVIL RIGHTS PURSUANT TO THE FOURTH, FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION AND 42 U.S.C. §1983 AND §1988 AS TO ALL DEFENDANTS**

48. Plaintiff hereby reasserts and realleges each and every allegation contained in paragraphs 1 through 47 as though fully set forth herein.

49. That in the placing of Wilmar Nash in custody at the Cass County Jail, Defendants owed to him the duty to make reasonable efforts to care for him in a reasonable and prudent manner, to exercise due care and caution and to follow the common law of the State of Michigan as it relates to incarcerated persons who are unable to care for themselves or seek medical attention by reason of their incarceration.

50. Notwithstanding the aforementioned duties, Defendants treated or cared for Wilmar Nash in a manner that was extremely careless, grossly negligent, reckless and without concern for his safety.

51. That Defendants in the face of Wilmar Nash's obvious need for medical assistance and attention, failed to obtain prompt and effective medical attention, failed to identify a medical emergency, or if they did identify a medical emergency, failed to act emergently as was required.

52. That while incarcerated, Wilmar Nash was experiencing extreme debilitating pain and Defendants failed to identify it and/or treat it and/or failed to obtain medical attention for it and/or intentionally ignored it and Wilmar Nash suffered a permanently disabling cardiac injury.

53. Defendants failed to adequately train correctional administrative staff, correctional deputies, correctional special deputies and correctional medical staff and failed to have adequate policies and procedures in place at the time of the occurrence, and if such policies and procedures were in place, failed to implement such policies and procedures with regard to persons incarcerated within the Cass County Jail.

54. That the Defendants engaged in conduct that was so reckless that it demonstrated a substantial lack of concern for whether or not injury would result to Wilmar Nash.

55. That as a direct and proximate result of the wrongful conditions of confinement as well as the withholding of pain medication, timely and appropriate medical care and treatment and referral, Wilmar Nash suffered debilitating pain and permanently disabling cardiac injury.

56. That as a direct and proximate result of the aforementioned conduct of the Defendants, Wilmar Nash suffered significant conscious pain and suffering and such conduct resulted in the defacto use of excessive force and physical brutality.

57. That the Defendants in both their personal and official capacities condoned affirmed and acquiesced in the wanton and reckless disregard of Wilmar Nash's constitutional protections during the events occurring within the Cass County Jail and thereafter until he was hospitalized in the late morning of September 20, 2014 at Borgess Hospital, Kalamazoo, Michigan.

58. That Defendants in their personal and official capacities obstructed and obviated Wilmar Nash's efforts to obtain medical care for his serious medical need and condition.

59. That as a direct and proximate result of the aforementioned conduct of the Defendants, Wilmar Nash has suffered a permanent cardiac injury with permanent physical and emotional injury, total and permanent disability, economic and non-economic compensatory damage, punitive damages, and any and all other damages including but not limited to attorney fees and costs recoverable under 42 U.S.C. §1983 and §1988 as well as any and all other damages otherwise recoverable under Michigan common law

WHEREFORE, Plaintiff prays that this Honorable court enter a Judgment in his favor and against Defendants jointly and severally, in an amount in excess of $20,000,000.00, as well as an award for costs, interest and attorney fees as well as punitive and/or exemplary damages.

DATE: February 24, 2015                CONYBEARE LAW OFFICE, P.C.

                                       BY:   / s/Michael D. Marrs
                                             Michael D. Marrs (P25117)
                                             519 Main Street
                                             St. Joseph, MI 49085
                                             (269) 983-0561

## JURY DEMAND

Plaintiff, Wilmar Nash, by and through his attorney, Michael D. Marrs, Conybeare Law office, P.C., hereby requests a trial by jury in the above entitled cause of action.

DATE: February 24, 2015  CONYBEARE LAW OFFICE, P.C.

BY:  / s/Michael D. Marrs  
Michael D. Marrs (P25117)  
519 Main Street  
St. Joseph, MI 49085  
(269) 983-0561